United States Court of Appeals,

Eleventh Circuit.

No. 96-4470.

DADE COUNTY, FLORIDA, A Political Subdivision, Petitioners-Appellants,

Florida Sheriff's Association, Amicus Curiae,

v.

Jose ALVAREZ, Andrew Benjamin, Ted Bradley, Peter Caroddo, Paul Chahal, et al.,
Respondents-Appellees.

Oct. 16, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-636-Civ-Atkins), C. Clyde Atkins, Judge.

Before EDMONDSON, Circuit Judge, and KRAVITCH and WOOD[*], Senior Circuit Judges.

KRAVITCH, Senior Circuit Judge:

Several current and former members of the Metro-Dade Police Department's Special Response Team ("SRT") brought this action against Dade County (the "County") under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.,* ("FLSA" or the "Act"), to recover overtime pay for off-duty hours spent performing physical fitness training. After a jury verdict in their favor, the district court entered judgment for the SRT officers. Because we conclude that physical training conducted off duty by SRT officers in order to maintain physical fitness standards mandated by their employer is not compensable work within the meaning of the FLSA, we reverse the judgment of the district court.[1]

I.

The SRT is a specialized unit of the Metro-Dade Police Department that assists police department personnel and other government agencies during potentially life-threatening situations. Its officers are highly trained in the use of special weapons, equipment, and techniques designed to

---

[*]Honorable Harlington Wood, Jr., Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

[1]Appellees' motion to strike portions of appellant's reply brief, previously carried with the case, is denied.

minimize the risk of harm to officers and civilians in situations involving barricaded subjects, snipers, hostages, riots or other similar civil disturbances, and high-risk search and arrest warrants. Because SRT call-outs often require extreme physical exertion, involve serious risk to human life, and can last as long as twenty-four hours, "[g]ood physical fitness is recognized as a vital and necessary quality for individuals assigned to SRT."[2]

For this reason, the County requires SRT officers to be in excellent physical condition. Prospective SRT personnel must pass a physical fitness examination before enrolling in the SRT training school. At the training school, SRT trainees undergo rigorous cardiovascular and strength training. Once members of the SRT, officers are frequently monitored to ensure that they are physically capable of performing SRT functions. Until recently, SRT supervisors tested the cardiovascular condition and strength of incumbent officers twice a year, and officers who failed this fitness exam were subject to reassignment outside the SRT.[3]

At the time this lawsuit was filed in April 1994, SRT officers rotated between two weeks on primary status, during which they trained in SRT tactics and responded to calls for SRT assistance, and two weeks on warrant status, in which they served felony arrest warrants on high-risk individuals.[4] When on primary status, SRT officers were allotted two hours of on-duty physical fitness training each day, which they used to conduct long-distance runs, weight training, and

---

[2]Plaintiffs' Ex. 21: 2-16 ("Metro-Dade Special Response Team, Standard Operating Procedures, September, 1990.").

[3]The test included: running 1.5 miles in 12 minutes or less; completing 4 pull-ups while wearing 25 pounds of weight; completing 50 sit-ups in two minutes or less; bench pressing body weight plus 25 pounds; completing a hand grip test of a minimum of 125 pounds; and doing 50 push-ups. Officers who failed the test were given thirty days of remedial training to regain the required level of physical conditioning. In the summer of 1995, the SRT eliminated the semi-annual fitness exam, and SRT team leaders now evaluate SRT officers' physical fitness as part of a general monthly evaluation.

[4]In June 1994, the County changed the rotation so that SRT officers now alternate between three weeks on primary status and one week on warrant status.

calisthenics.[5] Prior to 1990, SRT members also were permitted to train on duty twice a week for two hours during the warrant cycle. Since 1990, however, the SRT has not allotted any on-duty physical training time for officers on warrant status.[6]

Notwithstanding the restriction on on-duty training during the warrant cycle, SRT officers were expected to maintain their physical conditioning at all times. SRT supervisors instructed officers that they had to stay in shape regardless of whether they had adequate on-duty training time. For example, one SRT officer testified: "I have been told by my supervisors that it would be necessary and beneficial for me to work out in an off-duty status to maintain my physical fitness to get the job done."[7] An SRT Team Leader testified that he told his officers that "they had to continue to do their physical training whether they had the time on duty, and if they didn't ... that they would have to do it on their own time."[8] Other officers testified that off-duty training during the warrant cycle was necessary to maintain the level of fitness required for the job. In addition, expert witnesses testified that off-duty training was necessary during the warrant cycle because, without it, officers would suffer detraining and lose the endurance and performance abilities necessary for the SRT assignment.

Although SRT supervisors instructed officers to do whatever was necessary to maintain adequate cardiovascular and strength levels for the SRT assignment, they never directed officers to engage in any specific off-duty routine or training. The County required only that the officers remained in adequate shape to perform SRT functions and pass the physical fitness exam. The method, location, and amount of off-duty training were left to the officers' complete discretion. As

---

[5]Due to emergency call-outs, SRT officers often were not able to use all of their on-duty physical training time.

[6]On occasion, SRT officers are pulled from the warrant cycle to perform primary status duties. In such cases, the officers may have the opportunity to conduct physical training on duty.

[7]R:12-180.

[8]R:12-201.

one officer testified: "We are not told that we have to do weight training or we have to do running off duty."[9] Another stated: "Off duty I train when I like, where I like, as long as I like, with in the back of my mind the importance of getting my job done."[10]

II.

Appellees brought this action alleging, *inter alia,* that the County violated the FLSA by refusing to compensate them for the hours they spent exercising off duty.[11] At the conclusion of trial, the district court submitted a special verdict to the jury, which made the following factual determinations:

1. Plaintiffs' off-duty physical training or exercise is required or controlled by the County;

2. Plaintiffs' off-duty physical training or exercise is performed predominantly for the benefit of the County;

3. Plaintiffs' off-duty physical training is an integral and indispensable part of their principal activities as SRT officers; and

4. Dade County either knew, or showed reckless disregard, that its conduct violated the FLSA.

The district court then entered judgment for appellees, concluding that the SRT officers' off-duty physical training is compensable work under the FLSA and that the County willfully violated the Act. After denying the County's renewed motion for judgment as a matter of law made pursuant to Fed.R.Civ.P. 50(b), the district court certified for immediate appeal the question of whether appellees' off-duty exercise constitutes compensable work under the FLSA.[12] We granted the County's petition for leave to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

---

[9]R:12-45.

[10]R:12-181.

[11]Appellees also alleged, and the district court determined, that the County violated their Collective Bargaining Agreement ("CBA") by failing to pay them for off-duty training and violated the FLSA and the CBA by not compensating them for overtime hours worked in SRT training schools and courses.

[12]The parties agreed to bifurcate the issues of liability and damages, and the district court stayed the resolution of damages pending the outcome of this appeal.

4

We review the district court's denial of the County's renewed motion for judgment as a matter of law *de novo,* applying the same legal standard as the district court. *Shukla v. BP Exploration & Oil, Inc.,* 115 F.3d 849, 851 (11th Cir.1997). The question of whether a particular set of facts and circumstances constitutes work under the FLSA is a question of law. *Birdwell v. City of Gadsden, Ala.,* 970 F.2d 802, 807 (11th Cir.1992) As we stated in *Birdwell,* "[i]t is for the court to determine if a set of facts gives rise to liability; it is for the jury to determine if those facts exist." *Id.* at 808. The County is thus entitled to judgment as a matter of law if the facts, as interpreted in the light most favorable to the SRT officers, afford no basis for finding that their off-duty exercise constitutes work for the purposes of the FLSA.

### III.

Congress enacted the FLSA in 1938 to "guarantee either regular or overtime compensation for all actual work or employment." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 597, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944). The FLSA generally requires employers to pay overtime for "employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1). By not providing a definition of "work" or "employment" in the FLSA, Congress left it to the courts to determine which employment-related activities are compensable under the Act.

Generally, courts have construed work to mean all activities "controlled or required by the employer and pursued necessarily and primarily for the benefit of his employer and his business." *Muscoda*, 321 U.S. at 598, 64 S.Ct. at 703 (holding that underground travel to iron ore mines was compensable work). Whether an off-duty activity is conducted predominately for the benefit of the employer depends on the degree to which an employee's freedom is undermined by the work-related activity. "[I]t is clear that an employee's free time must be severely restricted for off-time to be construed as work time for purposes of the FLSA." *Birdwell,* 970 F.2d at 810 (holding that on-call waiting time was not compensable because "detectives' off-time was not so restricted that it was not used predominately for their benefit"); *see also Avery v. City of Talladega, Ala.,* 24 F.3d 1337, 1347

5

(11th Cir.1994) (holding that meal time was not compensable because officers "are free to spend their meal breaks in any way they wish so long as they remain in uniform, leave their radios on, and do not leave the jurisdiction").

The Portal-to-Portal Act, 29 U.S.C. §§ 251, *et seq.,* further provides that no employer shall be liable under the FLSA for activities which are "preliminary to or postliminary to" the principal activity or activities which the employee is employed to perform. 29 U.S.C. § 254(a)(2). Activities performed before or after the regular work shift are thus compensable under the FLSA only if they "are an integral and indispensable part of the principal activities for which covered workmen are employed." *Steiner v. Mitchell,* 350 U.S. 247, 256, 76 S.Ct. 330, 335, 100 L.Ed. 267 (1956) (holding that showering and clothes-changing by workers using caustic and toxic materials were compensable activities).

The Department of Labor has issued regulations to apply these general principles in the specific context of employment-related training activities. Under these regulations, training programs need not be counted as working time if: (1) attendance is outside the employee's regular working hours; (2) the employee does not perform productive work during the program; (3) attendance is voluntary; and (4) the program is not directly related to the employee's job. *See* 29 C.F.R. § 785.27; *see also Price v. Tampa Elec. Co.,* 806 F.2d 1551 (11th Cir.) (*per curiam* ) (applying § 785.27), *cert. denied,* 483 U.S. 1006, 107 S.Ct. 3230, 97 L.Ed.2d 736 (1987).

Applying these regulations in another case involving physical fitness training performed by a police department's SRT, the Department of Labor Wage and Hour Administrator (the "Administrator") concluded that off-duty training does not qualify as a compensable training activity. *See* Opinion Letter of the Wage and Hour Administrator, Maria Echaveste (June 1, 1994). In that case, the SRT officers, like appellees, were tested semi-annually to ensure that they could continue to meet the physical fitness standards required by their job. They also contended that a certain amount of off-duty training was required to maintain these standards. Nonetheless, the Administrator concluded that the off-duty training was not shown to be "required or directly related

6

to the SRT job. Such physical training is of a general nature that is beneficial to any individual, whether or not he or she is an SRT officer." *Id.* at 2. The Administrator therefore ruled that the off-duty physical training did not constitute working time within the meaning of § 785.27, and thus was not compensable under the FLSA. *Accord* Opinion Letter of the Wage and Hour Administrator, No. 1589 (September 12, 1985) ("Time voluntarily spent by police and fire fighters to maintain their physical fitness is not considered working time, even though fitness is a job requirement.").

The Administrator's application of the training regulations to the question of off-duty exercise provides us with valuable guidance for judging the facts before us. "[T]he rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944); *see also Townsend v. Mercy Hosp. of Pittsburgh,* 862 F.2d 1009, 1012 (3d Cir.1988) ("Although we are not bound by opinions of the Wage-Hour Administrator, the Administrator's expertise acquired through day-to-day application of the statute makes us hesitant to contravene such opinions unless the statute plainly requires otherwise.") (citing *Skidmore,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124).

After carefully analyzing the factual record in this case in accordance with the regulations issued by the Department of Labor, we conclude that the off-duty time spent by the SRT officers maintaining physical fitness standards mandated by their job is not compensable work within the meaning of the FLSA. First, there is no dispute here that the officers' off-duty fitness training was conducted outside of their regular working hours. Second, it is clear that the officers did not perform any productive work while conducting off-duty physical training. SRT officers are employed to respond to potentially life-threatening situations, and no such work was undertaken while they were exercising.

Third, the officers' off-duty training satisfies the voluntariness requirement of § 785.27. The SRT supervisors required only that the officers pass the semi-annual fitness test. Appellees

7

presented no evidence that they were required to spend a specific amount of time training or to perform certain exercise routines during their off-duty hours. Moreover, appellees did not suggest that their employment would be adversely affected if they did not participate in any particular off-duty activities, as long as they could pass the fitness tests. In conducting off-duty exercise, SRT officers were free to train at any location, at any time, and for any duration. Given the freedom the officers enjoyed in selecting their off-duty activities, we conclude that the actual off-duty physical training performed by individual officers was voluntary within the meaning of the regulations.

Finally, we conclude that the officers' off-duty physical training was not directly related to their SRT employment. In this case, the officers' physical fitness training was necessary to maintain a level of physical conditioning that each SRT officer already had attained. The County, by administering the semi-annual fitness exam, required only that the officers sustain the level of physical fitness established during the SRT training school and further developed during the primary cycle's on-duty cardiovascular and strength training activities. The County did not require the officers to acquire or develop a skill unique to their employment as SRT officers. Although physical fitness training allows SRT officers to perform their core employment function of responding to emergency situations, such training also provides the individual officers with benefits that extend beyond their employment position. The mere fact that fitness training must be undertaken off duty in order to perform SRT functions is insufficient to establish that such activity is directly related to the employee's job. Because the SRT officers' off-duty fitness training satisfies all of the four criteria listed in the regulations, we conclude that the officers' off-duty training need not be counted as working time.

The conclusion we reach by applying the Department of Labor's regulations is identical to the result suggested to us by the more general principles that courts have used to define work under the FLSA. In this case, SRT officers had complete freedom to define an off-duty physical training regimen. The sole limitation placed upon the officers by the County was that they maintain the level of physical conditioning required by the job of SRT officer. This single requirement did not

8

severely restrict the freedom of SRT officers, all of whom were active and physically fit when they applied for a position with the team. Moreover, maintaining proper physical fitness benefits individual officers in various ways that are separate from their SRT employment. Given the flexibility afforded SRT officers in conducting off-duty fitness training and the personal value of such exercise, we conclude that the off-duty exercise performed by individual officers—whether at home, at a private gym, or at a county facility—cannot be considered to have been performed predominately for the benefit of the County.

Similarly, the off-duty training of the SRT officers cannot be said to be an integral and indispensable part of the principal activity for which these officers are employed. SRT officers are not employed to conduct physical training or even to attain certain physical fitness standards. Rather, SRT officers are employed to provide rescue services during potentially life-threatening situations. The mere fact that a high level of physical conditioning is necessary to perform these services does not transform off-duty exercise into work for purposes of the FLSA. We therefore conclude, as a matter of law, that off-duty physical training mandated by the SRT's job requirements does not constitute compensable work under the Act.

IV.

Accordingly, the judgment in favor of appellees is REVERSED, and this case is REMANDED to the district court for entry of judgment in favor of appellant.

REVERSED and REMANDED.