William Russell AIKEN, et al.,
Plaintiffs–Appellants,

v.

CITY OF MEMPHIS, Tennessee,
Defendant–Appellee.

No. 97–6371.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 18, 1998.

Decided Sept. 7, 1999.

William B. Aitchison (argued), Aitchison & Vick, Portland, Oregon, Edwin Dean White III (briefed), Farris, Mathews, Branan & Hellen, Memphis, Tennessee, for Appellants.

Louis P. Britt III (argued and briefed), McKnight, Hudson, Ford & Harrison, Memphis, Tennessee, for Appellee.

Before: MARTIN, Chief Judge; RYAN and COLE, Circuit Judges.

COLE, J., delivered the opinion of the court, in which MARTIN, C. J., joined. RYAN, J. (pp. 762–65), delivered a separate opinion concurring in part and dissenting in part.

COLE, Circuit Judge.

Plaintiffs, past and present Memphis police officers, brought an action against the city of Memphis asserting various claims under the Fair Labor Standards Act (FLSA or Act), 29 U.S.C. §§ 201 et seq. Plaintiffs currently appeal the district court's dismissal of two of those claims on summary judgment and the court's final judgment in favor of the city on three other claims. For the following reasons, we AFFIRM the judgments of the district court.

## I.

Plaintiffs filed this action on January 7, 1993. During the course of the litigation, plaintiffs alleged, among other things: that certain aspects of the city's sick leave policy violate the FLSA; that the Act requires the city to compensate canine officers for the time they spend commuting to work with their assigned dogs; that aspects of the city's policy regarding the use of compensatory time violate the FLSA; that police captains are not exempt from FLSA overtime requirements; and that officers are entitled under the Act to compensation for time spent maintaining and commuting to work in city vehicles. The district court granted the defendant's motion for summary judgment on plaintiffs' first two claims. Following a pretrial conference, the parties submitted the remaining claims to the district court for a decision based on trial memoranda, stipulations, and exhibits. The district court eventually found in favor of the city on these claims as well. This timely appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a district court's grant of summary judgment. See Hartsel v. Keys, 87 F.3d 795, 799 (6th Cir.1996). We affirm "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). When evaluating an appeal, this Court views the evidence in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

On the issues that the district court ruled on at trial, we review the district court's conclusions of law de novo. See Doe v. Claiborne County, 103 F.3d 495, 505 (6th Cir.1996). We review its findings of fact for clear error. See United States v. Martin, 95 F.3d 406, 408 (6th Cir.1996).

## III. DISCUSSION

### III.A Compensatory Time

Plaintiffs contend that the district court erred by ruling that the city's policy regarding the use of compensatory time does not violate the FLSA. Pursuant to memoranda of understanding between the city and the plaintiffs' union, officers who work overtime may choose between receiving overtime pay or compensatory time. Officers can accumulate up to 480 hours of compensatory time. The memoranda dictate that an officer wishing to use accrued compensatory time must sign his or her precinct's compensatory time log book any time within thirty days of the requested day off. However, the city also requires that the commanding officer of each precinct monitor its log book to ensure that each shift is adequately staffed. If the commanding officer determines that fur-

ther requests for time off would adversely affect the functioning of the unit, based on the circumstances of the case, he or she will not allow more officers to sign up to use compensatory time on that particular day.

The plaintiffs argue that this practice of closing a precinct's log books violates the FLSA. The Act allows public agencies to provide, in lieu of overtime, "compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section." 29 U.S.C. § 207(o)(1). The Act imposes several conditions on a public agency's ability to offer compensatory time, however. Two are relevant for the purposes of this case. First, an employer may grant compensatory time in lieu of overtime pay pursuant only to a collective bargaining agreement, or other agreement. *See* 29 U.S.C. § 207(o)(2)(A). Second, an employee "shall be permitted by the employee's employer to use such time within a reasonable period after making the request if the use of the compensatory time does not unduly disrupt the operations of the public agency." 29 U.S.C. § 207(o)(5).

The plaintiffs' argument focuses on the phrase "unduly disrupt" in § 207(o)(5). They begin by arguing that § 207(o)(5) requires an employer to grant an employee's reasonably timed request for the use of banked compensatory time, unless the use of the time would be unduly disruptive. *See* 29 C.F.R. § 553.25(d) ("For an agency to turn down a request from an employee for compensatory time off requires that it should reasonably and in good faith anticipate that it would impose an unreasonable burden on the agency's ability to provide services of an acceptable quality and quantity for the public during the time requested without the employee's services."); S.Rep. No. 99–159 (1985) ("By unduly disruptive, the Committee means something

more than mere inconvenience."). The city, however, acknowledges its policy is not to grant overtime pay to one officer so that another can use compensatory time on a requested date. Plaintiffs contend that the payment of overtime to an officer so that another can use banked compensatory time is not an undue disruption. *See Heaton v. Moore*, 43 F.3d 1176, 1181 (8th Cir.1994) ("Moreover, the eventual payment of overtime compensation cannot be deemed 'unduly disruptive.'"); 52 Fed. Reg. 11,017 (1987) ("The Department recognizes that situations may arise in which overtime pay may be required of one employee to permit another employee to use the compensatory time off. However, such a situation, in and of itself, would not be sufficient for an employer to claim that it is unduly disruptive."). Plaintiffs conclude, therefore, that the city violates the Act by shutting the logbooks not at the point of undue disruption, but rather at the point at which a precinct would begin having to pay replacement officers on an overtime basis.

The fundamental defect in the plaintiffs' position, however, is that it completely ignores the phrase "reasonable period," which the Act gives the parties the freedom to define. *See Moreau v. Harris County*, 158 F.3d 241, 246–47 (5th Cir. 1998); see also 29 C.F.R. § 553.23(a)(1) (providing that agreements between employers and employees with regard to compensatory time are valid as long as they are not in conflict with the FLSA itself). Title 29 C.F.R. § 553.25(c)(2), specifically provides that:

> The use of compensatory time in lieu of cash payment for overtime must be pursuant to some form of agreement or understanding between the employer and the employee (or the representative of the employee) reached prior to the performance of the work. (*See* § 553.23.)[1] To the extent that the condi-

---

**1.** Title 29 C.F.R. § 553.23 provides, in its relevant sections:

(a) General.

(1) As a condition for use of compensatory time in lieu of overtime payment in cash, section 7(o)(2)(A) of the Act requires an agreement or understanding reached

tions under which an employee can take compensatory time off are contained in an agreement or understanding as defined in § 553.23, *the terms of such agreement or understanding will govern the meaning of "reasonable period."*

(emphasis added). Furthermore, in the comments to the final version of 29 C.F.R. § 553.25, the Department of Labor stated that:

> The Department believes ... that some parties may choose to include in their agreement or understanding the conditions or terms regarding the taking of compensatory time off. No useful purpose would be served, in the Department's view, by providing for some further review under the FLSA of the appropriateness of the agreed upon terms.

52 Fed.Reg. 11,2017 (1987); *see also Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905, 911, 137 L.Ed.2d 79 (1997) (Secretary of Labor's interpretation of own regulations is controlling unless plainly erroneous).[2]

In this case, the city and the plaintiffs' union had an agreement on the issue of compensatory time. The agreement provided "the conditions under which an employee can take compensatory time off." 29 C.F.R. § 553.25. These include a condition that once a certain number of officers requested a specific day off, the command-

ing officer may close the precinct's log book for that day. The city and the union in this case have agreed, then, that the reasonable period for requesting the use of banked compensatory time begins thirty days prior to the date in question and ends when the number of officers requesting the use of compensatory time on the given date would bring the precinct's staffing levels to the minimum level necessary for efficient operation. We are loath to interfere with this agreement. Therefore, we conclude that the district court did not err by finding for the city on this claim.

### III.B Canine Commute Time

■ Plaintiffs also contend that the district court erred by granting summary judgment in favor of the city on plaintiffs' claim for compensation for canine commute time. Memphis maintains a "Canine Squad," of which some plaintiffs are members. The city assigns each member of the squad a dog and a vehicle to transport the animal. The city also requires that members board the dogs at their homes and that they feed, train, walk, and clean up after their four-legged partners. The parties have settled most of the issues relating to compensation for time officers spend caring for dogs while not on duty. However, as the dogs reside in squad members' homes, the city also requires each canine officer to drive his or her dog

---

prior to the performance of work. This can be accomplished pursuant to a collective bargaining agreement, a memorandum of understanding or any other agreement between the public agency and representatives of the employees....

    (2).... The agreement or understanding may include other provisions governing the preservation, use, or cashing out of compensatory time so long as these provisions are consistent with section 7(*o*) of the Act....

    (b) Agreement or understanding between the public agency and a representative of the employees.

    (1) Where employees have a representative, the agreement or understanding concerning the use of compensatory time must be between the representative and the public agency either through a collective bar-

gaining agreement or through a memorandum of understanding or other type of oral or written agreement.

**2.** We acknowledge some difficulty reconciling 29 C.F.R. § 553.25(c)(2) and 29 C.F.R. § 553.25(d). The Seventh Circuit, however, has recently noted the importance of private ordering in FLSA cases, even in situations in which the FLSA has not granted parties the broad freedom to contract that it has here. *See Dinges v. Sacred Heart St. Mary's Hospitals, Inc.,* 164 F.3d 1056, 1059 (7th Cir.1999) ("[W]e must take account of the arrangement plaintiffs themselves chose.... Although the FLSA overrides contracts, in close cases it makes sense to let private arrangements endure—for the less flexible statutory approach has the potential to make everyone worse off."). We agree.

to work in the vehicles that the city provides. Plaintiffs contend that squad members spend a significant amount of time during their commutes "feeding, training, walking, and cleaning up after the dog[s]." Nevertheless, the city does not compensate officers for either their entire commuting time or for the time during the commute that they spend caring for dogs. Plaintiffs contend that this policy violates the Act. We disagree.

"The Portal–to–Portal Act, which amended the FLSA in 1947, 29 U.S.C. § 521 et seq., represented an attempt by Congress to delineate certain activities which did not constitute work," and which are therefore non-compensable. *See Reich v. New York City Transit Auth.*, 45 F.3d 646, 649 (2nd Cir.1995). "[W]alking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" is one example of a non-compensable activity. 29 U.S.C. § 254(a)(1). Similarly, employees are not entitled to compensation under the Act for "activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity." 29 U.S.C. § 254(a)(2). The effect of these sections is to make ordinary commute time non-compensable under the FLSA.

Despite these provisions, an employee is entitled to payment for any work that the employer requires the employee to perform during the commute. *See* 29 C.F.R. § 785.41. Several courts recently have addressed the issue of the compensability of canine care that occurs during commutes; the leading case is *Reich*. "Feeding, training, and walking [a police dog] are work" and are therefore compensable activities. *Reich*, 45 F.3d at 651. It follows, then, that to the extent that "[s]uch true dog-care work occurr[s] during the commute [it] is not exempted from compensation by the Portal–to–Portal Act." *Id.* at 652.

Plaintiffs, however, have not adduced evidence that canine officers spend more than a de minimis amount of time during their commutes engaged in such activities. *See Reich*, 45 F.3d at 652–53; *see also Bobo v. United States*, 136 F.3d 1465, 1468 (1998); *Andrews v. DuBois*, 888 F.Supp. 213, 219 (D.Mass.1995); *Levering v. District of Columbia*, 869 F.Supp. 24, 29–30 (D.D.C.1994). "When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or the Fair Labor Standards Act." *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946); *see also United States Dep't of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 780 (6th Cir.1995). Plaintiffs' affidavits demonstrate only that officers must "occasionally stop to feed the dog, let him out of the car or clean up after him while traveling to work." Although plaintiffs' affidavits also indicate that officers must "constantly" and "on a regular basis" discipline their dogs, such generalities do not create a question of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (holding that a mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive a motion for summary judgment). Even if we were inclined to conclude, which we are not, that this "evidence" indicates that, over the course of a commute, the seconds that it takes to discipline a dog—even on a regular basis— could add up to a significant amount of time, we are at a loss as to how Memphis could be expected to document such time. *See Lindow v. United States*, 738 F.2d 1057, 1062–63 (9th Cir.1984) (setting forth factors relevant to the de minimis doctrine, including size of the aggregate claim and practical difficulty of recording the time).

### III.C Vehicle Maintenance & Non–Canine Commute Time

■ The plaintiffs also contend that the district court erred by ruling in favor of

the city with regard to other commuting issues. The city provides some officers vehicles for use in commuting to and from work. If an officer is assigned a take-home vehicle, the officer must schedule maintenance for the vehicle, must keep the vehicle's radio on during the commute, and must respond to disabled vehicles or crimes that the officer observes during the commute. Plaintiffs sought compensation for the time they spend cleaning and scheduling maintenance for their city vehicles, and for the time spent commuting to work in them.

On the cleaning and maintenance issue, plaintiffs claims are without merit. The FLSA provides that:

> [T]he use of an employer's vehicle for travel by an employee and *activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities* if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a) (emphasis added). Plaintiffs do not argue that officers' use of police vehicles for commuting purposes takes officers outside of their normal commuting areas or that there is no agreement between the city and the officers' union covering these matters. Keeping vehicles clean and scheduling maintenance to be done at the city's expense are hardly arduous and precisely the sort of activities that Congress had in mind when it used the phrase "incidental to the use of [the employer's] vehicle." *Id.* The legislative history of the 1996 amendments is instructive: "It is not possible to define in all

circumstances what specific tasks and activities would be considered 'incidental' to the use of an employer's vehicle for commuting. . . . [R]outine vehicle safety inspections or other minor tasks have long been considered preliminary or postliminary activities and are therefore not compensable." H.R. Rep. 104–585.

On the issue of compensation for the entire commute, we likewise find that the district court did not err; monitoring a police radio does not convert commute time into compensable work. Cf. *Bartholomew v. Burlington*, 5 F.Supp.2d 1161, 1170 (D.Kan.1998) (employer requirement that out-going officer brief in-coming officer during commute does not change nature of travel time). Plaintiffs contend that they should be compensated because they must respond to emergencies that they observe while driving to work or that are communicated by radio dispatch. They also contend that they should be compensated because the presence of marked police vehicles on the city's streets deters crime.

Plaintiffs are incorrect. As an initial matter, if an officer takes time out of his or her commute to respond to an incident, he or she is compensated if the response takes more than thirty minutes.[3] Second, although the presence of marked police cars on the streets arguably deters crime, this is irrelevant for FLSA purposes. *See Hellmers v. Vestal*, 969 F.Supp. 837, 843 (N.D.N.Y.1997) ("Nowhere in the [FLSA] does there appear to be an exemption for commuting time spent in marked police cars."); H.R. Rep. 104–585 ("The fact that a vehicle may been modified for special purposes, displays company logos, or is specially equipped does not alter the nature of such travel."). Finally, the amount of work involved in monitoring a police radio during a commute is simply de minimis.[4] Again, the district court did not err.

---

**3.** The city apparently takes the position that shorter stops are de minimis. Plaintiffs note that shorter stops are not compensated, but do not argue that the city's threshold length of time for compensability is too high, choosing instead to argue that all commuting time is compensable.

**4.** This case is distinguishable from those that have held that a requirement that employees monitor a noisy radio converts on-call time to work. *See, e.g., Cross v. Arkansas Forestry Comm'n*, 938 F.2d 912, 916–17 (8th Cir. 1991). In those cases, the key is whether

### III.D. Location–When–Ill Policy ·

■ The plaintiffs contend that the district court erred in granting summary judgment on the issue of whether the city's Location–When–Ill (LWI) policy, DR 1104, violates the FLSA. The department pays employees on leave for illness or an on-the-job injury at their normal hourly rate for their regular shifts. The department's LWI policy, however, regulates the activities of employees who are on leave. It provided, during the time period in question,[5] that "[a] member reporting sick or injured shall be confined to his or her residence, clinic, or hospital, except to visit his or her personal physician or by permission of his or her supervisor."[6] The policy thus placed no restrictions on an officer's activities while at home, but if an officer left home without permission, he or she was subject to discipline. The record indicates that the city enforced the policy with checks by supervisors every third day. The department made checks "at all hours." It conducted them by phone, but if there was no response, the city sent someone to the officer's residence.

Plaintiffs claim, however, that the LWI policy was so onerous and intrusive that any waking hour spent under it counts as an hour worked for the purposes of the FLSA. Therefore, plaintiffs claim that they are entitled to overtime compensation for "non-sleeping time spent outside of their regular workshifts under the structures of DR 1104."

■ Generally speaking, the FLSA requires employers to compensate an employee at a rate of pay not less than one and one-half times the employee's normal rate of pay for hours the employee works above the statute's applicable maximum workweek. See 29 U.S.C. § 207(a). Under certain circumstances, employer restrictions on what is ostensibly an employee's free time can cause such time to count as hours worked. See 29 C.F.R. § 553.221(c), (d). The question confronting this Court is analogous to that posed by cases considering the compensability of "on-call" time.[7] An employer must compensate an employee for time spent "predominantly for the employer's benefit." *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 609 (6th Cir.1992) (*citing Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118 (1944)); *see also* 29 C.F.R. § 553.221(c), (d). In other words, the question in on-call cases is whether the employer's restrictions on officers' time "prevent the employees from effectively using the time for personal pursuits." *Martin*, 968 F.2d at 611. "That some of the plaintiffs' personal activities may have been affected is not enough." *Id.* In making this determination, the Court examines "all the circumstances of the case." *Id.* at 609 (internal quotes omitted). "[A]n employee's free time must be severely restricted for off-time to be construed as work time for purposes of the FLSA." *See Dade County v. Alvarez*, 124 F.3d 1380, 1384 (11th Cir.1997) (internal quotes omitted), *cert. denied*, —— U.S.

monitoring the device, even where it is portable, prevents employees from using their free time as they wish. For example, a squawking radio would hardly be welcome in church, the library, or the movies; it would effectively prevent the employee from engaging in any pursuit in a location that demands quiet. Here, however, the question is whether the employer requires the employee to perform a significant amount of work during the commute. Under the facts of this case, we conclude that the answer is no.

5. After the commencement of this litigation, the city "clarified" the LWI policy. It now provides that it applies only "during his or her scheduled duty hours."

6. The reason for this policy was, as the defendant puts it, to dissuade officers from "the inappropriate practice of using 'sick' days as additional vacation days."

7. An on-call employee leaves the employer's premises "with the understanding that he or she is expected to return to work" if called in. 29 C.F.R. § 553.221.

——, 118 S.Ct. 1804, 140 L.Ed.2d 943 (1998).

Using this fact-specific standard as a guide, it is clear that time Memphis officers spend subject to the city's LWI policy is not compensable work.[8] At home, such officers are free to use their time as they please. Although they must receive permission before leaving home—assuming of course that the officer is well enough to leave home—there is no evidence in the record to indicate that Memphis ever, let alone routinely, denied permission. Thus, we conclude that Memphis's insignificant phone-in burden does not transform recovery time into work, as it is not "so onerous as to prevent employees from effectively using the time for personal pursuits." *Martin*, 968 F.2d at 611. Indeed, the relatively few cases that have held on-call time compensable involved a significantly greater intrusion on employees than exists in this case. *See, e.g., Bright v. Houston Northwest Medical Center Survivor, Inc.*, 934 F.2d 671, 678–79 (5th Cir.1991) (employee on call 24 hours a day, 365 days a year, must always be sober and within 20 minutes of work); *Cross v. Arkansas Forestry Comm'n*, 938 F.2d 912, 916–17 (8th Cir.1991) (employees required to monitor noisy hand-held radio 24 hours per day, forcing them to concentrate on radio all day and preventing them from going anywhere noise would be unwelcome); *see also Berry v. County of Sonoma*, 30 F.3d 1174, 1183 (9th Cir.1994) (listing as one of the "illustrative, non-exhaustive" list of factors that a court should consider in determining whether an employee is free to engage in personal activities "whether there were excessive geographical restrictions on employee's movements"). The

district court was correct to dismiss this claim.

### III.E. Exempt Status of Captains

Finally, plaintiffs contend that the district court erred by ruling in favor of the city on plaintiffs' claim regarding police captains. Memphis does not pay overtime to captains because it classifies them as salaried, executive employees. The FLSA does not require employers to provide overtime pay to "bona fide executives." 29 U.S.C. § 213(a)(1). The regulations implementing the FLSA provide that for an employee to fall within this exemption, that employee must be paid on a "salary basis." 29 C.F.R. § 541.1(f). An employee is so paid "if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118.

The plaintiffs contend that the police captains are not bona fide executives for the purposes of the FLSA because they were subject to pay reductions for disciplinary infractions relating to the "quality or quantity" of their work. The City of Memphis Civil Service Rules[9] provide that if a Memphis employee commits a violation of the rules, the employee is subject to several disciplinary actions, including "unpaid suspension of a duration as short as one day." Although these rules theoretically apply to all Memphis employees, there is no rule that specifically provides that police captains are subject to suspensions. Only one captain—not a plaintiff in

---

8. An initial, and obvious, difference between this an on-call cases in which courts have held employee time compensable is that an officer on LWI leave is presumed to be too ill or injured to work. Therefore a Memphis officer on leave does not have to contend with the possibility of being called in by the department.

9. "Penalties imposed for safety rules of major significance will not affect the employee's salaried status." 29 C.F.R. § 541.118(a)(5). Defendant apparently concedes that some of the rules in question are not "safety rules of major significance."

this case—has ever been suspended without pay for disciplinary reasons.

In *Auer v. Robbins*, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), a case with facts virtually identical to those in the case before us, the Supreme Court considered whether "an employee's pay is 'subject to' disciplinary or other deductions whenever there exists a theoretical possibility of such deductions, or rather only when there is something more to suggest that the employee is actually vulnerable to having his pay reduced." *Id.* at 459, 117 S.Ct. 905. The *Auer* plaintiffs, several sergeants and a lieutenant, along with all other St. Louis police department employees, were nominally covered by a police manual that listed 58 possible rules violations and also listed several possible penalties associated with each, including, in some instances, deductions in pay. The Court held that the plaintiffs were nevertheless salaried employees under the salary-basis test. Deferring to the Secretary of Labor's interpretation of the FLSA, the Court wrote that employees are denied exempt status under the test only when "employees are covered by a policy that permits disciplinary or other deductions in pay '*as a practical matter.*'" *Id.* at 461, 117 S.Ct. 905 (emphasis added). This is so when the employer has either (1) "an actual practice of making such deductions," or (2) "an employment policy that creates a significant likelihood of such deductions." *Id.* (internal quotations omitted). A "one-time deduction in a sergeant's pay, under unusual circumstances," was not sufficient to establish the former. *Id.* at 462, 117 S.Ct. 905. A manual that applied to all department employees, and thus that did not "effectively communicate that pay deductions are an anticipated form of punishment for employees in petitioners' category," did not establish the latter. *Id.* The Court concluded that its holding was the most sensible, since it "avoids the imposition of massive and unanticipated overtime liability (including the possibility of substantial liquidated damages) in situations in which a vague or broadly worded policy is nominally applicable to a whole range of employees but is not 'significantly likely' to be invoked against salaried employees." *Id.* at 461, 117 S.Ct. 905.

In this case, there is nothing to indicate that Memphis police captains are anything other than salaried employees.[10] They may be theoretically subject to pay reductions, but as a "practical matter" they are not. The evidence shows that only one captain ever faced a deduction in pay. Thus, plaintiffs cannot demonstrate an actual practice of applying such deductions to captains. By plaintiffs' own admission, the Civil Service rules apply to all department employees. Thus, the policy does not effectively communicate that captains will be suspended in any specified circumstance. Again, we conclude that the district court did not err.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgments of the district court.

RYAN, Circuit Judge, concurring in part and dissenting in part.

In my view, neither the district court nor the majority here come squarely to grips with the plaintiffs' claim that they are, on some occasions, being denied compensatory time off for reasons forbidden under the Fair Labor Standards Act and its implementing regulations. The result, in my judgment, is that the plaintiffs con-

---

10. On facts virtually identical to the ones here, several courts have followed Auer. *See, e.g., West v. Anne Arundel County*, 137 F.3d 752, 762–63 (4th Cir.1998); *Childers v. City of Eugene*, 120 F.3d 944, 947 (9th Cir.1997); *Stanley v. City of Tracy*, 120 F.3d 179, 183–84 (9th Cir.1997); *Ahern v. County of Nassau*, 118 F.3d 118, 121 (2nd Cir.1997); *Carpenter v. City of Denver*, 115 F.3d 765, 767 (10th Cir.1997); *Balgowan v. New Jersey*, 115 F.3d 214, 219 (3d Cir.1997); *DiGiore v. Ryan*, 987 F.Supp. 1045, 1052 (N.D.Ill.1997).

tinue to be denied relief to which they are entitled.

The parties agree that 29 U.S.C. § 207(*o*)(5)(B) assures that, in this case, an officer

> shall be permitted by the employee's employer to use [comp] time within a reasonable period after making the request if the use of the compensatory time does not unduly disrupt the operations of the public agency.

Thus, under this subsection there are two conditions precedent that must be satisfied before an employee may take comp time off: (1) the employee must be permitted to take the comp time within a reasonable period of time after making his request; and (2) taking the comp time must not unduly disrupt the operations of the Memphis Police Department.

One of the implementing regulations adopted by the Department of Labor provides that

> [t]o the extent that the conditions under which an employee can take compensatory time off are contained in an agreement or understanding ... the terms of such agreement or understanding will govern the meaning of "reasonable period."

29 C.F.R. § 553.25(c)(2).

The parties agree that there is a collective bargaining agreement in place between them. Unfortunately, the agreement, the foregoing agency regulation notwithstanding, does not define the term reasonable period. However, a Department of Labor regulation does define reasonable period as follows:

> (c) *Reasonable Period.* (1) Whether a request to use compensatory time has been granted within a "reasonable period" will be determined by considering the customary work practices within the agency based on the facts and circumstances in each case. Such practices include, but are not limited to (a) the normal schedule of work, (b) anticipated peak workloads based on past experience, (c) emergency requirements for staff and services, and (d) the availability of qualified substitute staff.

29 C.F.R. § 553.25(c)(1).

The regulation also defines the expression unduly disrupt as follows:

> (d) *Unduly Disrupt.* When an employer receives a request for compensatory time off, it shall be honored unless to do so would be "unduly disruptive" to the agency's operations. Mere inconvenience to the employer is an insufficient basis for denial of a request for compensatory time off. (See H. Rep. 99–331, p. 23.) For an agency to turn down a request from an employee for compensatory time off requires that it should reasonably and in good faith anticipate that it would impose an unreasonable burden on the agency's ability to provide services of acceptable quality and quantity for the public during the time requested without the use of the employee's services.

29 C.F.R. § 553.25(d).

The plaintiffs concede that the defendant's precinct commanders may properly reserve to themselves the authority to determine when the logbooks are "full," so that the "manning" in the precinct will not fall below necessary levels and thus unduly disrupt the operation of the police department. The plaintiffs insist, however, that the precinct commanders are declaring the logbook full, not when there is a risk of manpower falling below what is necessary for the public safety, but rather when the number of officers requesting comp time off reaches the point that it will be necessary to pay their replacement officers at the overtime rate of pay. That excuse for declaring the logbook full, the plaintiffs argue, is not permitted under the FLSA, or the Labor Department regulations, or the collective bargaining agreement between the parties, because paying a replacement officer at the overtime rate does not unduly disrupt the operation of the police department as that term is defined in 29 C.F.R. § 553.25(d) and has nothing whatever to do with the "reasonable peri-

od" within which the comp time may be used following a request for it. In addition, the plaintiffs point to Department of Labor commentary on the application of the FLSA which provides:

> The Department [of Labor] recognizes that situations may arise in which overtime may be required of one employee to permit another employee to use compensatory time off. However, such a situation, in and of itself, would not be sufficient for an employer to claim that it is unduly disruptive.

Application of the Fair Labor Standards Act to Employees of State and Local Governments, 52, Fed.Reg.2012, 2017 (1987).

To the same effect, argue the plaintiffs, is an Eighth Circuit decision in *Heaton v. Moore*, 43 F.3d 1176, 1181 (8th Cir.1994), which holds that the fact that an employer must pay an employee overtime compensation in order to permit another employee to use accrued compensatory time off, does not, of itself, constitute an undue disruption allowing the employer to deny the request.

The defendant acknowledges that it has a policy of not permitting comp time to be taken if it would require the department to bring in a replacement officer at the overtime rate of pay. Plaintiffs claim that more often than not it is the application of this policy, forbidden by the federal regulations, that the precinct commanders employ to declare the logbooks full.

The district court failed to come to grips with this argument, stating only that "the City could have allowed the officer the time off by paying another officer overtime compensation to work in the requesting officer's place [,but] [a]s general policy, the Division declined to call in officers on an overtime basis in order to permit another officer off for compensatory time." *Aiken v. City of Memphis*, 985 F.Supp. 740, 745 (W.D.Tenn.1997). The district court then observed that a denial of compensatory time off for that reason "only occurred occasionally and was not routine." *Id.* The plaintiffs claim it occurs all the time.

Instead of resolving this difficult, mixed question of fact and law, the district court merely held, as the majority opinion in this court does, that the entire issue is governed by the collective bargaining agreement between the parties, and the collective bargaining agreement has a provision as to the reasonable period within which time off may be requested. The district court's reasoning, although to me rather abstruse, apparently is that if an officer doesn't make a request for comp time early enough to assure that his replacement need not be paid time-and-a-half, then the officer will not have requested his time off within a reasonable period. The problem, of course, with that sort of reasoning is that it conflates the concept of the reasonable period within which the day off must be requested, and whether it is an undue disruption of the police department's operations to permit the time off to be taken. Thus, the plaintiffs' claim that the logbook is being declared full for a forbidden reason is never directly engaged.

The majority opinion likewise dodges the problem, simply by declaring that the whole issue is governed by the collective bargaining agreement, and the majority is "loath to interfere with [the] agreement."

To me, that answer, like the district court's answer, is no answer at all. The district court made a factual finding that "[a]s a general policy, the Division declined to call in officers on an overtime basis in order to permit another officer off for compensatory time." *Aiken*, 985 F.Supp. at 745. In my opinion, this policy is precisely the practice the Department of Labor contemplated, and sought to forbid, when it declared that it would not be an undue disruption for an employer to ask one employee to work overtime in order to grant another employee time off. See Application of the Fair Labor Standards Act to Employees of State and Local Governments 52 C.F.R.2012, 2017 (1987).

I would reverse the judgment of the district court with respect to this issue

only. As to the remaining issues in the case, I concur in the majority opinion.