**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 3, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ESMERALDA CASTANEDA; JOSHUA
J. PETERS; ANDREW RUIZ;
ANGELICA GUTIERREZ; JOANN S.
LOPEZ; MARIANO GALLEGOS; TIM
PRAEUNER; DAWN ALLMER;
SAMUEL SANCHEZ; ADAN
ABDULLAHI; AMINO N. GALAL;
ISTAHIL FARAH JAMA; ABDIRIZAK
M. ABDI; MUHYADIN AU; MOHAMED
HOROR; HABIBO A. ELMI; HIBO H.
MAALIN; FAIUMA JAMA; BATULA
AWL; SADI M. ADAN; ABDIRIZAK
AHMED; AHMED ALI GELLE;
HABIBA ABDI; KURESHA S. NOOR;
MOHAMED ISSE; MOHAMED A.
MOHAMED; ABDI ABDIRAHMAN;
MOHAMED MOHAMED; MOHAMED
BUROW; ISRAD IBRAHIM; ABDI
JAMA; ABDIAZIZ OSMAN; IBRAHIM
O. HASSAN; NUR A. ABDULLAHI;
ABDUL KADIR ALI; NUR B. SHUBE;
ABDIAMAR BARE; SUHAN JAMA;
HASSAN FARAH; NAJIMA HANDULE;
AHMED SIRAD ABDI; ALI ABDI;
ABDULLAHI ABDIVAHMAN;
SALEBAN AHMED; ABDIMAHAT ALI;
MANUEL GALLEGOU; ABDIRAHMAN
HASSAN; SADIYO HASSAN; NIMC
MOHAMED; ALI AHMED MUSE;
NIMO OMAR; ABDUL PATAH;
ASHLEY TAYLOR; SAHRO JAMA;
FARDOWSA ALI; IBRAHIM A. IMAN;
AHMED KHALIF; IRAQ I. ABADE;
MOHAMED F. JAMA; MOHAMUD
MOHAMED AHMED; ANAB ABDI;
HAJI ALI MOHAMUD; KAMAL

Nos. 14-1217 & 14-1221

SALAH; FARDOWSA ANSHUR; SAHRA NUR; TAJIR HERSI,

      Plaintiffs - Appellants / Cross-Appellees,

v.

JBS USA, LLC,

      Defendant - Appellee / Cross-Appellant,

and

SWIFT BEEF COMPANY; SWIFT & COMPANY, INC.; JBS SWIFT & COMPANY; JBS S.A.,

      Defendants.

---

**ORDER**

---

Before **KELLY**, **HARTZ**, and **GORSUCH**, Circuit Judges.

---

These matters are before the court on the appellants/cross-appellees' *Petition for Rehearing and Rehearing En Banc*.

The request for panel rehearing is denied by the original panel members. The petition was also transmitted to all of the judges of the court who are in regular active service. As no member of the panel and no judge in regular active service on the court requested that the court be polled, the request for en banc review is likewise denied.

The panel has concluded, however, *sua sponte*, that the original decision should be amended to add one word to page 17. The change is in the 5th line up from the bottom of

2

the page. The new amended decision is attached to the order. The clerk is directed to issue the amended version *nunc pro tunc* to the original filing date.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 31, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

ESMERALDA CASTANEDA; JOSHUA
J. PETERS; ANDREW RUIZ;
ANGELICA GUTIERREZ; JOANN S.
LOPEZ; MARIANO GALLEGOS; TIM
PRAEUNER; DAWN ALLMER;
SAMUEL SANCHEZ; ADAN
ABDULLAHI; AMINO N. GALAL;
ISTAHIL FARAH JAMA; ABDIRIZAK
M. ABDI; MUHYADIN AU; MOHAMED
HOROR; HABIBO A. ELMI; HIBO H.
MAALIN; FAIUMA JAMA; BATULA
AWL; SADI M. ADAN; ABDIRIZAK
AHMED; AHMED ALI GELLE;
HABIBA ABDI; KURESHA S. NOOR;
MOHAMED ISSE; MOHAMED A.
MOHAMED; ABDI ABDIRAHMAN;
MOHAMED MOHAMED; MOHAMED
BUROW; ISRAD IBRAHIM; ABDI
JAMA; ABDIAZIZ OSMAN; IBRAHIM
O. HASSAN; NUR A. ABDULLAHI;
ABDUL KADIR ALI; NUR B. SHUBE;
ABDIAMAR BARE; SUHAN JAMA;
HASSAN FARAH; NAJIMA HANDULE;
AHMED SIRAD ABDI; ALI ABDI;
ABDULLAHI ABDIVAHMAN;
SALEBAN AHMED; ABDIMAHAT ALI;
MANUEL GALLEGOU; ABDIRAHMAN
HASSAN; SADIYO HASSAN; NIMC
MOHAMED; ALI AHMED MUSE;
NIMO OMAR; ABDUL PATAH;
ASHLEY TAYLOR; SAHRO JAMA;
FARDOWSA ALI; IBRAHIM A. IMAN;
AHMED KHALIF; IRAQ I. ABADE;
MOHAMED F. JAMA; MOHAMUD
MOHAMED AHMED; ANAB ABDI;
HAJI ALI MOHAMUD; KAMAL

Nos. 14-1217 and 14-1221

SALAH; FARDOWSA ANSHUR;
SAHRA NUR; TAJIR HERSI,

      Plaintiffs - Appellants / Cross-
      Appellees,

v.

JBS USA, LLC,

      Defendant - Appellee / Cross-
      Appellant,

and

SWIFT BEEF COMPANY; SWIFT &
COMPANY, INC.; JBS SWIFT &
COMPANY; JBS S.A.,

      Defendants.

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:08-CV-01833-RPM)**
_____

Robert L. Wiggins,Jr., Wiggins, Childs, Pantazis, Fisher & Goldfarb, Birmingham, Alabama (Robert J. Camp, Wiggins, Childs, Pantazis, Fisher & Goldfarb, Birmingham, Alabama, Diane Vaksdal Smith, Burg Simpson Eldredge Hersh & Jardine, P.C., Englewood, Colorado, and Joseph D. Lane, The Cochran Law Firm, P.C., Dothan, Alabama, with him on the briefs for Plaintiffs-Appellants/Cross-Appellees.

W.V. Bernie Siebert, Sherman & Howard, L.L.C., Denver, Colorado (Kelly K. Robinson, Sherman & Howard, L.L.C., Denver, Colorado and Lori M. Phillips, Sherman & Howard, L.L.C., Atlanta, Georgia, with him on the briefs), for Defendant-Appellee/Cross-Appellant.
_____

Before **KELLY**, **HARTZ**, and **GORSUCH**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.

2

_____

Plaintiffs are current and former hourly employees in the slaughter and fabrication operations of a beef-processing plant in Greeley, Colorado, now owned by JBS USA, LLC (JBS). Employees on the slaughter line kill the cattle and disassemble them into sides of beef; employees on the fabrication line cut the sides into various beef products. Plaintiffs have been paid under the terms of collective-bargaining agreements negotiated between the United Food and Commercial Workers International Union (the Union) and JBS. (For convenience we will refer to both JBS and its predecessors as JBS.)

Plaintiffs filed suit against JBS in October 2010, claiming that they did not receive compensation required by the Fair Labor Standards Act (FLSA). The disputes concern when the work day begins, when it ends, and what, if any, compensation is due when the production lines halt for a 30-minute meal break. After a bench trial the United States District Court for the District of Colorado found that Plaintiffs had failed to carry their burden of proof and entered judgment in favor of JBS. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm. The court could properly find that compensation for Plaintiffs' activities complied with the FLSA.

I.   BACKGROUND

A. Introduction to the Legal Framework

The FLSA typically requires an employer to compensate employees for all the time that the employee spends working on the employer's behalf. *See Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006). The FLSA does not define *work*, *see Smith*, 462 F.3d at 1285, but the Supreme Court has defined the term in the

3

FLSA as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and *primarily* for the benefit of the employer and his business," *Tenn. Coal, Iron & R. Co. v. Muscoda Local N. 123*, 321 U.S. 590, 598 (1944) (emphasis added).

One issue that has been the source of many disputes is when the work day begins and ends. A partial solution is provided by § 4(a) of the Portal-to-Portal Act of 1947, under which commute time and walking to and from the employee's work station is ordinarily noncompensable. It provides that the term *work* does not include either (1) walking or travel time to and from the employee's "actual place of performance of the principal activity or activities which [the] employee is employed to perform" or (2) "activities which are preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a). The Act leaves open to dispute, however, what is encompassed by the term *principal activity*. The Supreme Court has explained that "activities performed either before or after the regular work shift, on or off the production line, are compensable . . . if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a)(1)." *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956) (time that battery-plant employees exposed to toxic chemicals spent changing clothes and showering pre- and post-shift was compensable). In other words, "any activity that is integral and indispensable to a principal activity is itself a principal activity." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005) (internal quotation marks omitted).

4

To avoid some of the remaining points of controversy, Congress has left a few matters to collective bargaining. After a Department of Labor interpretive bulletin said that changing clothes, at least in some circumstances, could be an integral part of a worker's principal activity (and therefore compensable, as confirmed in *Steiner*, 350 U.S. at 256), Congress enacted 29 U.S.C. § 203(*o*). *See Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 875–76 (2014). Under that statute a collective-bargaining agreement can provide that changing clothes and washing at the beginning and end of the work day are not compensable. The parties have disputed what activities (such as donning (and doffing) protective gear and picking up (and disposing of) equipment) can be encompassed by this exclusion from compensation. And they have also disputed whether workers must be compensated for their walk time between the locker rooms (where they don and doff clothing) and the production lines. We will discuss the applicable law in greater detail below.

Another ground for ignoring some activities at the beginning and end of the work day is the *de minimis* doctrine, which originated in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946). "When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the [FLSA]." *Id.* The *de minimis* doctrine has been codified (and limited, *see Sandifer,* 134 S. Ct. at 880 n.8) by the Department of Labor, which has promulgated a rule stating that "insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded

5

for payroll purposes, may be disregarded," 29 C.F.R. § 785.47, although "[a]n employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him." *Id.; see Reich v. Monfort*, 144 F.3d 1329, 1333–34 (10th Cir. 1998) (adopting three-factor test to determine whether time is *de minimis*: "(1) the practical administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether the claimants performed the work on a regular basis"); *id.* at 1333 ("There is no precise amount of time that may be denied compensation as de minimis.").

Once the work day starts, all activity is ordinarily compensable until the work day ends. Under the continuous-workday rule promulgated by the Secretary of Labor: "[T]o the extent that activities engaged in by an employee occur after the employee commences to perform the first principal activity on a particular workday and before he ceases the performance of the last principal activity on a particular workday, the provisions of [§ 4 of the Portal-to-Portal Act] have no application." 29 C.F.R. § 790.6(a); *see Alvarez*, 546 U.S. at 28. That is, an activity (such as walking to or from a work station) that occurs between the first and last principal activities of the day is compensable even if that same activity would be excluded from compensable time under the Portal-to-Portal Act had it occurred before the first or after the last principal activity of the day. *See Alvarez*, 546 U.S. at 37.

One exception to the continuous-workday rule is at issue in this litigation. The employer does not need to compensate employees for a bona fide meal break, which is

6

ordinarily at least 30 minutes. *See* 29 C.F.R. § 785.19(a). The parties have disputed whether certain activities at the beginning and end of the 30-minute meal breaks at the JBS plant are compensable work and even whether the break meets the requirement for a bona fide meal break. Again, we will discuss the applicable law in more detail below.

## B. Work at the Plant and Agreement with the Union

To prevent contamination of beef products, government regulations and JBS rules require workers to wear hair nets, beard nets, plastic aprons, plastic gloves, plastic sleeves, cotton gloves, frocks, and surgical scrubs. For worker safety, they are also required to wear personal protective equipment such as boots, scabbards, mesh protective equipment, cut-resistant gloves, hard hats, ear plugs, and safety glasses. At the beginning of each day, employees go to their lockers to retrieve and put on such items and to retrieve their knives, hooks, and steels. (All Plaintiffs have wielded knives in their JBS jobs.) They then proceed to the production floor. Plaintiffs, depending on their job duties, obtain frocks, cotton and cut-resistant gloves, and scrubs from supply windows and sanitize their boots, hands, knives, hooks, and mesh gloves. Knife-wielding employees may sharpen their knives in the knife room.

When they leave the production line at the end of the shift, employees remove their equipment and sanitary clothing. They return their frocks, cotton and cut-resistant gloves, and scrubs to their designated areas. They wash their personal protective and sanitary equipment at wash stations and then sanitize it in special tanks. *Id.* They must also sanitize their hands and boots before walking to the locker room to store clothing and equipment.

7

Employees perform similar tasks at the beginning and end of their meal break. They remove their equipment and sanitary clothing, except for their hard hats, hair nets, beard nets, ear plugs, and safety glasses. They walk to a wash station to wash their boots and sanitize their hands and boots. Fabrication employees also turn in their cotton gloves. Before returning to the lines, employees must sanitize their boots and hands and put back on what they had removed.

Under a timekeeping practice known as gang time (also sometimes referred to as line time or master time) employees are paid from the time the first product arrives on the production line until the last product leaves the line. A supervisor and a union representative track the time. No one records activities employees perform off the production line at the beginning and end of the shift and during the meal break, so employees are free to socialize and loiter.

In 2000, in an effort to compensate employees for some of the unmeasured activities, JBS and the Union each hired an industrial engineer to calculate the time needed to don and doff safety clothing and equipment at the beginning and end of the shift and at meal time, and, at the end of the shift, walk to the wash area to clean safety clothing and equipment, wait at the wash area, and wash safety equipment. These studies did not account for increased walk times caused by waiting, obstructions, and congestion. JBS and the Union agreed to incorporate the measured times for the tasks, called plug times, into their 2000 agreement as compensable time. The agreement did not, however, account for walk time from the wash area to the locker room at the end of the day or any walk time at the beginning of the day. The time devoted to activities compensated by

8

plug times are not measured each day for each employee. Rather, the employee is compensated by "plugging in" the precalculated time for the employee (depending on the employee's specific job)—that is, adding it to the measured amount of work time.

The parties later incorporated the 2000 plug times into their collective-bargaining agreement that was effective from 2004 through 2009. In 2007 the Union and JBS again engaged industrial engineers to measure the time it took employees to complete various tasks. This time JBS's engineer used a process called Ease Works that measured the various movements it took to complete a task. For instance, when measuring how long it would take to put on a mesh apron the engineer would add together the times it took to reach out, grab the mesh, lift the mesh, etc. To identify the various components of each task, the engineer observed videos of employees performing the tasks. The Union's engineer, however, again calculated times by measuring how long it took employees to complete the tasks on the production floor. During their 2007 studies the engineers also measured how long it took for employees to walk from the center of the locker room to the center of the production floor.

JBS and the Union reached an agreement in 2010 to continue to compensate employees as provided in the 2000 agreement but negotiated additional plug time to account for pre- and post-shift walking between the locker room and the production floor by using for all employees the distance between the center of the locker room and the center of the production floor. Neither party has pointed us to the calculations underlying the 2010 plug-time payments and they do not appear to be in the record. As part of this negotiated agreement, JBS agreed to pay current employees the additional time

9

retroactively for the preceding two-year period of November 2007 to November 2009. Those no longer employed were not paid retroactive walk time.

### C. The Litigation

Before the 2010 agreement, on August 27, 2008, Plaintiffs filed the present putative collective action against JBS under the FLSA. In an FLSA collective action an aggrieved employee can bring a claim against an employer on behalf of himself "and other employees similarly situated." 29 U.S.C. § 216(b). To become a party, an employee must opt in by "giv[ing] his consent in writing." *Id.*; *see Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989).

Plaintiffs' complaint contended that they had not been adequately compensated for pre- and post-shift "time spent donning and doffing clothing and protective gear, washing [equipment and themselves], and walking to and from their job posts," Aplt. App. I at 117. They also sought compensation for their entire meal break on the ground that it was not a bona fide meal break, or at least for their time donning, doffing, washing, and walking at the beginning and the end of meal breaks. They requested damages for uncompensated work going back two or three years before they filed their complaint in 2008. (Undercompensated employees ordinarily must bring a claim to recover unpaid wages within two years of accrual of the claim. *See* 29 U.S.C. § 255(a). But if the employer willfully violated the FLSA, the limitations period is extended to three years. *See id.*)

The district court granted partial summary judgment to JBS, ruling that Plaintiffs' claim for pre- and post-shift changing of clothes was noncompensable under 29 U.S.C. §

203(*o*) because it was covered by the collective-bargaining agreement. The parties proceeded to a two-phase bench trial on Plaintiffs' claims that they were not reasonably compensated for (1) pre- and post-shift waiting, walking, and transporting tools; and (2) mealtime walking, transporting, waiting, washing, and donning and doffing.

In the first phase of the bench trial the parties agreed to limit their evidence to liability issues. Based on video evidence of plant operations, the district court found that there were "substantial amounts of time required in walking from the locker rooms to the assigned positions on the lines and waiting because of congestion in their areas before the beginning and ending of the work performed on the lines." Aplt. Add. at 9–10 (First Order – Doc. 166). The court also found that JBS "has not provided a full 30 minute meal break and the minimal amounts of plug times for donning and doffing during the break do not satisfy the obligation imposed by the statute and the regulation." *Id.* at 13. It noted that "[t]he questions relevant to remedy may require a determination of the reasonableness of the plug times based on the 2007 measurements," and "[a]n appropriate remedy for the failure to provide a bon[a] fide 30 minute meal break must be determined." *Id.* at 13–14.

During the second phase of the bench trial, the court considered the parties' expert testimony and reports on the reasonableness of the plug times paid to employees. Plaintiffs presented the opinions of Dr. Robert G. Radwin to support their position that the plug times did not reasonably compensate them. He relied primarily on videos of plant operations that included two full daily shifts. To obtain his time measurements, he used a video-analysis software program to calculate the time that employees actually

11

spent on various activities. Comparing his measurements to the pre-2010 plug times, Dr. Radwin concluded that JBS owed Plaintiffs from 1.7 to 14.6 minutes per day beyond the plug times for work on different shifts on different production lines.

JBS countered with the testimony and report of Dr. Paul S. Adams. Dr. Adams relied on the same videos and evidence as Dr. Radwin, but he used a different method to calculate the times. He broke the relevant activities into elements that corresponded to articles—that is, single items of clothing or personal equipment. The element times were then added to develop estimates for the full set of articles worn by various workers. He excluded avoidable delays, such as personal phone use or socializing. Ultimately, his walk times were very similar to the walk times JBS began paying in 2010. For instance, he concluded that the pre- and post-shift walk time for slaughter employees was 1.46 minutes, compared to the plug time of 1.43 minutes, and that pre- and post-shift walk time for fabrication employees was 3.25 minutes, compared to the 3.21-minute plug time. Some of his remaining measurements were greater than the plug times under the collective-bargaining agreements, and some were less; but overall his times were slightly longer.

Dr. Adams also challenged Dr. Radwin's videos (and, implicitly, Dr. Adams's own calculations based on that evidence). He noted that "[t]he video[s] . . . were apparently taken for demonstrative purposes and were not taken to facilitate time study"; "[t]he poor camera angles and lines of sight in the supplied videos prevented the proper capture of many beginning and ending points"; "[t]he obtrusive camera crew was obviously noticed by many subjects and their behaviors were affected"; and "[m]any

12

activity areas were not included in the videos." *Id*. at 1883–84 (Report of Dr. Adams at 7–8). One consequence was that there were "insufficient sample sizes for a scientific study." *Id.* at 1884. In addition, Dr. Adams expressed numerous criticisms of Dr. Radwin's use of the videos. He complained that Dr. Radwin measured the time employees chose to take to complete an activity rather than the time the employee was actively engaged in the activity; did not follow established scientific methodology for time studies; failed to account for differences among workers in what personal protective equipment they wore; failed to account for workers who did not wait in line; assigned times to employees who did not actually perform the activity assigned; and used a walk-time methodology that "resulted in double counting and inflated values due to improper geographical weighting of calculated times." *Id*. at 1893 (Report of Dr. Adams at 17).

After considering the expert testimony and reports, the district court rejected Dr. Radwin's opinions and concluded that Plaintiffs had failed to meet their burden of proving that the plug times did not reasonably compensate them for work time not included in the gang time. The district court also rejected Plaintiffs' claim that the entire meal period was compensable. It said that it had incorrectly assumed in its first order that a 30-minute meal break was required under the FLSA. On reconsideration, it concluded that the predominant benefit of the meal break was for the employees because the "predominant purpose of the 30 minute break is to provide an opportunity to eat and the company provides cafeteria services for that purpose." Aplt. Add. at 20 (Final Order – Doc. 231). To the extent that Plaintiffs were entitled to compensation for work performed during the meal break, it ruled that they had not shown that the work time

13

exceeded the plug time they had been accorded in the collective-bargaining agreement. The court entered judgment in favor of JBS and dismissed the case.

Plaintiffs' briefs are not clear about what specific relief they are seeking on appeal. As best we can understand: (1) they are seeking walk time before and after their production-line shifts to the extent it has not been properly compensated by plug times paid by JBS; and (2) although they are no longer contending that the meal break is not a bona fide meal period, they do seek payment for the time during their break engaged in walking, washing, donning, and doffing not properly compensated by plug times. We reject Plaintiffs' arguments. We therefore need not address JBS's alternative grounds for affirmance—that it acted in good faith (which can excuse noncompliance with the FLSA, *see* 29 U.S.C. § 259), and that Plaintiffs failed to present testimony representative of all the various types of employees included as Plaintiffs, *see Reich v. S. Md. Hosp*., 43 F.3d 949, 951–52 (4th Cir. 1995). We note, however, that those alternative grounds for affirmance were not properly raised as a cross-appeal; an answer brief is the proper vehicle to raise arguments that do not seek greater relief than that afforded by the district-court judgment. *See Jennings v. Stephens*, 135 S. Ct. 793, 798 (2015); *United States v. Madrid*, 633 F.3d 1222, 1225 (10th Cir. 2011) ("The office of a cross-appeal is to give the appellee more than it obtained by the lower-court judgment.")

## II.   ANALYSIS

"When a party appeals from a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo." *Gallardo v. United States*, 752 F.3d 865, 870 (10th Cir. 2014). "If the district court's account of the evidence is

14

plausible in light of the record viewed in its entirety, [we] may not reverse it even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74 (1985).

## A. Issues Decided Summarily

We begin by quickly disposing of several of Plaintiffs' arguments on appeal. First, they complain that the district court did not impose the relief required by its initial decision after the liability stage of the trial. But that decision did not bind the court. It was an interlocutory decision, which the court could revise at any time before final judgment. *See Rimbert v. Eli Lilly and Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011). The court recognized that it had changed its mind on some matters. The opinion after the second stage of trial states: "It must be admitted that the result now reached is contrary to the expectations generated by the previous Order. It is, however, the result of careful reflection on the evidence in this case and the court opinions cited above." Final Order at 10. We review only that second opinion, not the one superseded by it.

Second, Plaintiffs complain that the district court's findings of fact and conclusions of law do not satisfy Fed. R. Civ. P. 52(a), which governs findings and conclusions. But a court's findings and conclusions are satisfactory if they enable the appellate court to conduct a proper review of the decision below. *See OCI Wyo., L.P. v. PacifiCorp*, 479 F.3d 1199, 1203–04 (10th Cir. 2007). Plaintiffs' brief fails to explain how the findings or conclusions in this case fall short on a material issue. Indeed, the argument on this point in their opening brief is so vague and general that we could

15

properly rule that the issue is waived.  *See Baca v. Berry*, 806 F.3d 1262, 1276 (10th Cir. 2015).  In any event, the district court's findings and conclusions are adequate for our review.

Third, Plaintiffs argue that the district court improperly found that JBS could avoid liquidated damages because it acted in good faith.  But that issue is moot because we affirm the decision that JBS did not violate the law in the first place.

That leaves two issues to resolve:  the adequacy of compensation (1) for walk times before and after the employee is engaged on a production line and (2) for meal breaks.

### B.  Walk Time at Beginning and End of Shift

In district court Plaintiffs challenged the adequacy of the plug times paid by JBS for walk time by employees between the locker rooms and the production floors at both ends of their shifts.  The district court rejected the challenge because it refused to credit the findings by Dr. Radwin, Plaintiffs' expert on that matter.  The court's rejection was based largely on the opinion of Dr. Adams, the JBS expert.  *See* Final Order at 8 ("On balance, this Court accepts the opinions of Dr. Adams.").  Dr. Adams expressed the view that even using Dr. Radwin's questionable data, the plug times were reasonably close to, and sometimes greater than, the times necessary to perform the various activities.  The court concluded that Dr. Radwin's calculations did "not adequately account for all of the variations involved" in the time it takes different employees to perform the same activity. *Id.* at 21.  It noted that "Dr. Radwin's calculations are based on very limited information."  *Id*.  And it said:  "[Dr. Adams's] results are markedly different from those

16

of Dr. Radwin. These differences reflect the underlying difficulty in attempting to determine the realities of the workplace by those methods." *Id*. at 8. In our view, the court's rejection of Dr. Radwin's plug times was reasonable; and we note that on appeal Plaintiffs do not contest the rejection.

That leaves the argument raised by Plaintiffs on appeal, which relies on JBS's adoption of the plug times included in the 2010 collective-bargaining agreement for walk time from the locker room to the production floors before the workers' shifts and for walk time from the wash area to the locker room after the shifts. They argue that JBS essentially conceded in that agreement that those plug times are necessary to comply with the FLSA. They therefore claim that under their complaint filed in 2008 they can recover this unpaid work time beginning in 2006 (or 2005 if JBS's violation of its duty to pay was willful, *see* 29 U.S.C. § 255(a)). Some workers have already been paid part of what Plaintiffs claim because in 2010 JBS agreed with the Union that the additional plug times would be paid to current employees for work in 2008 and thereafter (but would not be paid to those no longer employed by JBS in 2010). As a result, Plaintiffs contend that they all are entitled to back pay beginning in 2006 (or 2005), although those working in 2010 would not receive backpay for work after 2007. The district court refused to order payment for those times, apparently because Plaintiffs failed to produce credible supporting evidence of the walk times.

We affirm, but on an alternative ground raised by JBS. We hold that walk times from the locker rooms to the production floors at the beginning of the shift and from the wash stands to the locker rooms at the end of the shift were not compensable work before

17

plug times were added for that activity in the 2010 collective-bargaining agreement between the Union and JBS. Our analysis is as follows: First, under § 203(*o*), time at the beginning or end of the workday devoted to changing clothes is not compensable if so determined under a collective-bargaining agreement. Second, the Supreme Court has ruled that time spent donning or doffing items that cannot be described as clothing is also noncompensable under § 203(*o*) if performed at the same time as the noncompensable changing of clothes and the period "can, *on the whole*, be fairly characterized as time spent in changing clothes . . . ." *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 881 (2014) (internal quotation marks omitted). In particular, the time would still be noncompensable even if workers spend a comparatively small part of the time gathering or disposing of equipment. Third, agreeing with *Sandifer v. U.S. Steel Corp.*, 678 F.3d 590, 595–98 (7th Cir. 2012), we hold that if time to perform an activity is noncompensable under § 203(*o*), then the activity is not a "principal activity" that begins or ends the workday. Therefore, walk time between the production floor and the locker room, where noncompensable donning or doffing occurs, is noncompensable under the Portal–to Portal Act. Fourth, agreeing with then-Judge Sotomayor's opinion in *Singh v. City of New York*, 524 F.3d 361, 367–70 (2d Cir. 2008), we hold that travel to the place where the employee performs a principal activity of the job, which is ordinarily noncompensable under the Portal-to-Portal Act, does not become compensable just because during that travel the employee must carry an item necessary for performance of the work if carrying the item adds negligible time or inconvenience to the travel. Therefore, walk time between the production floor and the locker room is noncompensable even if an employee must carry

18

equipment on the way. Fifth and finally, because the purpose of § 203(*o*) is to leave compensability of certain activities to collective bargaining, *see Sandifer*, 134 S. Ct. at 876, it follows that if collective bargaining results in providing some compensation for unmeasured work time, such compensation does not convert any additional otherwise-noncompensable activities into work time. Therefore, walk time after donning and before doffing that would otherwise be noncompensable does not become compensable just because the collective-bargaining agreement provides plug time for some donning or doffing. We proceed to explain more fully.

We begin with 29 U.S.C. § 203(*o*). Under that statute, "the compensability of time spent changing clothes or washing is a subject appropriately committed to collective bargaining." *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 876 (2014). The statute renders those activities noncompensable if they are "excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement." 29 U.S.C. § 203(*o*)[1]; *see Salazar v. Butterball, LLC*, 644 F.3d 1130, 1135 (10th Cir. 2011).

Moreover, a collective-bargaining agreement can also render noncompensable the donning and doffing of items that are not clothing as long as that donning and doffing adds relatively little time to the overall donning or doffing process. This was the holding

---

[1] Section 203(*o*) states in full: "Hours Worked.--In determining for the purposes of sections 206 [Minimum wage] and 207 [Maximum hours] of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee."

19

of *Sandifer v. U.S. Steel Corp.,* 134 S. Ct. 870, 880–81 (2014). The Court did not reach its conclusion by applying the *de minimis* doctrine. It expressed doubt about the *de minimis* doctrine in the § 203(*o)* context, stating that it "does not fit comfortably within the statute at issue here, which, it can fairly be said, is *all* about trifles—the relatively insignificant periods of time in which employees wash up and put on various items of clothing needed for their jobs." But the analysis is rather similar to that under the doctrine. *Sandifer* concerned employees who sought backpay for their time spent donning and doffing 12 items of protective gear, which they argued were not clothing subject to § 203(*o*). The district court held that the items were all clothes but that even if three items (hardhats, glasses, and earplugs) were not, the time spent on them was *de minimis. See id.* at 874. The Supreme Court affirmed that conclusion, but under somewhat different reasoning. It agreed that the employees' time spent donning and doffing nine of the items qualified as changing clothes under § 203(*o*). *See id.* at 879. And even though the remaining three items were not clothes under § 203(*o*), the Court reasoned that *on the whole* the time could be characterized as changing clothes under § 203(*o*). *See id.* at 881 ("The question for courts is whether the period at issue can, *on the whole*, be fairly characterized as time spent in changing clothes or washing." (internal quotation marks omitted)). "If an employee devotes the vast majority of the time in question to putting on and off equipment or other non-clothes items . . . the entire period would not qualify as time spent in changing clothes under § 203(*o*), even if some clothes items were donned and doffed as well." *Id.* "But if the vast majority of the time is spent

20

in donning and doffing clothes . . . , the entire period qualifies, and the time spent putting on and off other items need not be subtracted." *Id.*

It is unclear to us when the results under the *de minimis* doctrine and the on-the-whole test would differ. Perhaps the distinction is that compensation is required for activities that take only a short period of time if that period is nevertheless comparable to the time it takes to change clothes; in other words, the test is whether the time is *relatively* short, rather than whether it is short on some absolute scale.

*Sandifer* seems applicable here. JBS and the Union have negotiated over the years whether compensation (through plug times) should be provided for activities before the worker arrives at the production line or after the worker departs the production line. Two of those activities are donning and doffing clothing and equipment in the locker room. We agree with Plaintiffs that not everything they don and doff can be described as clothing. But as we understand the district court's findings at the end of the trial, the additional time for donning and doffing such nonclothing items is *de minimis*. Plaintiffs do not challenge that finding and any challenge would be unsuccessful in any event because the finding is a reasonable view (perhaps the only reasonable view) of the evidence. We conclude that the collective-bargaining agreement could therefore exclude the locker-room activities from compensation under § 203(*o*) because under *Sandifer*, 134 S. Ct. at 881, the locker-room time was devoted "on the whole" to changing clothes.

One could nevertheless argue, however, that even though picking up (or returning) equipment and donning (or doffing) nonclothing items in the locker room are not compensable, those activities are still "principal activities" that start (and end) the

workday, so the walk times between the locker room and the production floor are compensable. (Recall that under the Portal-to-Portal Act, travel time is not compensated only if it precedes the first principal activity of the day or follows the last such activity. *See* 29 U.S.C. § 254(a).) We reject the argument. Facing the same issue, the Seventh Circuit explained in *Sandifer*:

> If [clothes-changing time] is not work time—the workers aren't being paid and their union has agreed to their not being paid—how can it be one of the 'principal activities which the employee is employed to perform'? He is required to wear work clothes, and for that matter he is required to show up for work. But he is not employed to show up or employed to change clothes. Not all requirements imposed on employees constitute employment. An employee may be required to call in when he is sick, but unless he is on paid sick leave he is not paid for the time it takes to place the call.

678 F.3d at 596 (internal ellipsis omitted). The court recognized that the Supreme Court had held in *Alvarez*, 546 U.S. at 37, that absent a collective-bargaining agreement on the matter, donning and doffing of work clothes at the workplace could be principal activities and walking between the locker room (where the donning and doffing occur) and the work station is not exempted from compensability by the Portal-to-Portal Act. But, said the court:

> Section 203(*o*) permits the parties to a collective bargaining agreement to reclassify changing time as nonworking time, and they did so, agreeing that the workday would not start when the workers changed their clothes; it would start when they arrived at their work site. If clothes-changing time is lawfully not compensated, we can't see how it could be thought a principal employment activity, and so [the Portal-to-Portal Act] exempts the travel time in this case.

22

*Sandifer*, 678 F.3d at 596–97. The Eighth Circuit was persuaded, *see Adair v. ConAGRA Foods,* 728 F.3d 849, 852–53 (8th Cir. 2013), and so are we. *But see Franklin v. Kellogg*, 619 F.3d 604, 619 (6th Cir. 2010). After all, in enacting § 203(*o*),

> Congress was trying to eliminate the disruptions that the [Supreme] Court's interpretation of the Fair Labor Standards Act had caused, and to allow the determination of what is compensable work in borderline cases (is changing into work clothes 'work'? is walking from a locker room to a work station 'work'?) to be settled by negotiation between labor and management.

*Sandifer*, 678 F.3d at 597–98; *see also id*. at 598 (quoting preamble to the Portal-to-Portal Act in support).

What about the fact that Plaintiffs carried their tools of the trade (knives or hooks) between the locker room and the production floors? The travel from the locker room to the production floor (and back) is excluded from FLSA coverage by the Portal-to-Portal Act unless it follows (or precedes) a principal activity; and we have just held that Plaintiffs' locker-room activities are excluded from being principal activities by § 203(*o*) and the parties' collective-bargaining agreement. We do not believe that Plaintiffs' carrying knives or hooks converts what would otherwise be noncompensable walk time into compensable walk time. The decision closest in point is the Second Circuit opinion in *Singh*, written by then-Judge Sotomayor. The plaintiffs in *Singh*, city fire-alarm inspectors, argued that they were entitled to compensation for all or part of their time spent commuting to and from work because their employer required that they "carry and keep safe necessary inspection documents during their commutes." *Singh*, 524 F.3d at 364. The Second Circuit rejected their argument. Relying on the Supreme Court's holding that whether time is work time depends on whether the "time is spent

23

predominantly for the employer's benefit or for the employee's," *Armour & Co. v. Wantok*, 323 U.S. 126, 133 (1944), the court held that the predominant benefit of the commute was for the employees, not the employer: "Carrying a briefcase during a commute presents only a minimal burden on the inspectors, permitting them freely to use their commuting time as they otherwise would have without the briefcase. . . . While the city certainly benefits from the plaintiffs' carrying these materials, it cannot be said that the City is the predominant beneficiary of this time." *Singh*, 524 F.3d at 368–69. The court concluded that "the mere carrying of inspection documents does not transform plaintiffs' otherwise non-compensable commute into compensable time." *Id.* at 369. It added that its analysis "in many ways resembles a *de minimis* test." *Id.* It cited the Sixth Circuit opinion in *Aiken v. City of Memphis*, 190 F.3d 753, 759 (6th Cir. 1999), which held that police officers need not be compensated for their commuting time even though they must monitor their police radios during this travel, "because 'the amount of work involved in monitoring a police radio during a commute is simply de minimis.'" *Singh*, 524 F.3d at 369 (quoting *Aiken*, 190 F.3d at 759). Then-Judge Sotomayor concluded, "The point is that, under either approach, when an employee is minimally restricted by an employer during a commute, such that his or her use of commuting time is materially unaltered, the commuting time will generally not be compensable under the FLSA." *Id.*

In the case before us, there is no reason to believe that carrying equipment increased the walk time to any extent or meaningfully restricted what workers did on their way to the production floor. In fact, the district court noted that "employees are not required to move directly from their lockers to the line … [or] to their lockers after

24

leaving the wash area at the end of the shift." First Order at 10–11. (Stopping to wash the equipment on the way to the production floor would delay the trip but Plaintiffs are not challenging on appeal any failure to compensate for the wash time, which apparently is represented in the plug times.) Under the *Singh* analysis, the walk time in this case would not be compensable just because the worker is carrying a knife or hook.

There is one more possible wrinkle in this case. If the collective-bargaining agreement had totally eliminated compensation to employees for any of the walk time or clothes-changing time, the above analysis would compel the conclusion that the employees are not owed any additional compensation under the FLSA. But the agreement *did* provide plug times to compensate for clothes-changing time. We therefore may not be able to apply literally the holding in the Seventh Circuit opinion in *Sandifer* that noncompensable work activity cannot be "principal activity" that marks the beginning or end of the workday. *See* 678 F.3d at 596–97.[2] Nevertheless, the proposition on which the reasoning in *Sandifer* was founded is that § 203(*o*) was enacted to leave to collective bargaining whether certain activities at the beginning and end of the workday off the production line should be compensated. It would make no sense to leave to collective bargaining *whether* there should be compensation for such activities but not

_____

[2] Section 203(*o*) excludes from employment hours the time "excluded from measured working time" by the collective-bargaining agreement. We assume, without deciding, that plug times are "measured working time" that has been adopted, not excluded, by the collective-bargaining agreement, even though they are not *measured* during the work day (the plug time added to the worker's time is based on one-time calculations incorporated in the collective-bargaining agreement). If plug times are not considered "measured working time," however, then the activity covered by plug times is "excluded from measured working time," and this case is identical to *Sandifer* in this respect.

25

*how* such activities are to be compensated. What possible policy rationale would require the negotiating parties to be limited to an all-or-nothing regime—either providing for no compensation for the activities or fully compensating all of them? We therefore give § 203(*o*) the commonsense reading that it leaves to collective bargaining the extent to which employees will be compensated for activities that could be rendered totally noncompensable through that provision.

Applying this analysis to Plaintiffs' claims, we conclude that (1) all the walk time for which they seek back pay could have been rendered noncompensable by the collective-bargaining agreement (through § 203(*o*)), and (2) therefore they were entitled only to compensation for walk time provided through the plug times in the collective-bargaining agreements in effect during the time at issue. We affirm the district court's denial of the walk-time claims because Plaintiffs are seeking greater compensation than provided in the collective-bargaining agreements.

## C. Meal Break

Plaintiffs' final issue requires less discussion. They claim that they have been inadequately compensated for time spent donning, doffing, cleaning, and walking during their 30-minute meal break. Under 29 C.F.R. § 785.19(a), bona fide meal periods are not considered work time and are not compensable. A bona fide meal period is "[o]rdinarily 30 minutes," but "[a] shorter period may be long enough under special conditions." *Id.* For a break to qualify as a bona fide meal period, "[t]he employee must be completely relieved from duty for the purposes of eating regular meals," and "[t]he employee is not

26

relieved if he is required to perform any duties, whether active or inactive, while eating."

*Id.*

Most courts, however, apply the predominant-benefit test to determine whether a meal period is bona fide. *See, e.g.*, *Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 65 (2d Cir. 1997) (The "predominant benefit standard sensibly integrates developing case law with the regulations' language and purpose, and more importantly, with the language of the FLSA itself." (citation and internal quotation marks omitted)); *Babcock v. Butler Cty.*, 806 F.3d 153, 156 (3d Cir. 2015); *Roy v. Cty. of Lexington, S.C.*, 141 F.3d 533, 545 (4th Cir. 1998); *Hartsell v. Dr. Pepper Bottling Co. of Tex.*, 207 F.3d 269, 274 (5th Cir. 2000); *Ruffin v. MotorCity Casino*, 775 F.3d 807, 811 (6th Cir. 2015); *Leahy v. City of Chi., Ill.*, 96 F.3d 228, 230 n.2 (7th Cir. 1996); *Guyton v. Tyson Foods, Inc.*, 767 F.3d 754, 763 (8th Cir. 2014); *Beasley v. Hillcrest Med. Ctr.,* 78 F. App'x 67, 69–70 (10th Cir. 2003). *But see Brennan v. Elmer's Disposal Serv., Inc.,* 510 F.2d 84, 88 (9th Cir. 1975) (applying a completely-relieved-from-duty test under which "[a]n employee cannot be docked for lunch breaks during which he is required to continue with *any* duties related to his work" (emphasis added)). "The predominant benefit test[ ] asks whether the [employee] is primarily engaged in work-related duties during meal periods." *Babcock*, 806 F.3d at 156 (internal quotation marks omitted). If so, the employer must compensate the employee for the entire meal period. *See Ruffin*, 775 F.3d at 811. "But as long as the employee can pursue his or her mealtime adequately and comfortably, is not engaged in the performance of any substantial duties, and does not spend time predominantly for the

27

employer's benefit, the employee is relieved of duty and is not entitled to compensation under the FLSA." *Id.* (internal quotation marks omitted).

On appeal, Plaintiffs do not contest that their meal break was a bona fide meal break. They challenge only the failure of the district court to compensate them for what they claim to be work performed during the break—donning, doffing, and walking. They contend that the district court denied compensation for the contested time on the ground that the predominant purpose of the meal break was to benefit the employees. If the court had rejected compensation on that ground, Plaintiffs might have a convincing argument. But that is not how we read the court's decision. It discussed the predominant-benefit test only to resolve whether the meal break was a *bona fide* meal break. That discussion was necessary because Plaintiffs had argued (or at least the court thought that they had argued) that the break was not bona fide so Plaintiffs were entitled to compensation for all 30 minutes. After finding the meal break to be bona fide, the court examined whether the plug times for the meal break were adequate to compensate for work time during the break. It found that Plaintiffs had not met their burden of showing that the plug times for that period were inadequate. Plaintiffs have not challenged that ruling. And they would fail if they did.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.