**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 2, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TATONKA CAPITAL CORPORATION,

　　Plaintiff - Appellee,

v.

MICHAEL CONNELLY,

　　Defendant - Appellant.

No. 19-1450
(D.C. No. 1:16-CV-01141-MSK-NYW)
(D. Colo.)

_____

**ORDER AND JUDGMENT***
_____

Before **HARTZ**, **McHUGH**, and **CARSON**, Circuit Judges.
_____

Michael Connelly, proceeding pro se,[1] appeals from the amended final

judgment entered in favor of Tatonka Capital Corporation on its claim against him as

---

　* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

　[1] Because Mr. Connelly is an attorney, we decline to give his appellate briefs the same liberal construction that we would give pro se briefs filed by nonattorneys. *See Mann v. Boatright*, 477 F.3d 1140, 1148 n.4 (10th Cir. 2007) ("While we generally construe pro se pleadings liberally, the same courtesy need not be extended to licensed attorneys." (citation omitted)).

a guarantor.[2]  After a bench trial and a partial grant of Mr. Connelly's postjudgment

motion, the district court determined that Mr. Connelly was liable to Tatonka in the

principal sum of $618,000.  Exercising jurisdiction under 28 U.S.C. § 1291, we

affirm.

I.  Background

Mr. Connelly served as the Chief Executive Officer of Mosaica Education for

about 15 years.  In 2007, Tatonka and Mosaica entered into a Revolver Loan and

Security Agreement (the Revolver).  The district court found that the Revolver was

"essentially a line of credit secured by Mosaica's assets" and "[f]or several years

thereafter, Mosaica variously drew upon or made payments in accordance with the

Revolver."  Aplt. App., Vol. 2 at 134.

In 2013, Mosaica owed almost $5 million on the Revolver, but it continued to

request additional funds from Tatonka.  Because of Tatonka's own cash-flow

problems and its belief "that Mosaica had outstripped its borrowing capacity,"

Tatonka agreed to make certain short-term advances to Mosaica only if Mosaica's

---

[2] In his notice of appeal, Mr. Connelly states that he is also appealing from "the orders previously entered in this action dismissing [his] counter-claims and striking his jury demand."  Aplt. App., Vol. 2 at 212.  And his opening brief includes the following in his list of issues presented on appeal:  "Did the court err in striking Mr. Connelly's jury demand?" and "Did the Court err in dismissing Mr. Connelly's counter-claims?"  Aplt. Opening Br. at vii.  But he does not offer any argument on these two issues or otherwise address how the district court erred.  He therefore has waived these issues. *See Utah Env't Cong. v. Bosworth*, 439 F.3d 1184, 1194 n.2 (10th Cir. 2006) ("An issue mentioned in a brief on appeal, but not addressed, is waived.").

officers personally guaranteed repayment of Mosaica's debts.  *Id.* (brackets and internal quotation marks omitted).  Mr. Connelly signed six guaranty agreements.

Mosaica repaid the amounts of the short-term advances, but it defaulted on its long-term indebtedness to Tatonka.  It was then forced into receivership proceedings in federal court in Georgia.  At the conclusion of those proceedings, the receiver determined that the remaining debt Mosaica owed Tatonka was $5,068,480.22.

In May 2016, Tatonka filed the underlying complaint against Mr. Connelly, asserting one claim for breach of the guaranty agreements.  Tatonka alleged that under the guaranty agreements Mr. Connelly was liable for all amounts that Mosaica still owed Tatonka.  Ultimately, the district court found Mr. Connelly liable only on the first of the guarantees he executed (the Guaranty), holding that Tatonka could not enforce the later guarantees because Mr. Connelly mistakenly thought that the guarantees covered only the short-term loans (which had been repaid), Tatonka knew of Mr. Connelly's mistake after he executed the Guaranty, but Tatonka did not inform Mr. Connelly of his mistake before he executed the later guarantees.  The principal amount owed on the Guaranty was $618,000.

II.  Discussion

"When a party appeals from a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo."  *Castaneda v. JBS USA, LLC*, 819 F.3d 1237, 1247 (10th Cir. 2016) (internal quotation marks omitted).  Mr. Connelly first argues that the Guaranty on its face covered only the Revolver loans and Tatonka had failed to prove that any of the Mosaica debt to Tatonka arose

3

from those loans. He next argues that even if Tatonka had met its burden of proving that he was liable under the terms of the Guaranty, the Guaranty should be reformed based on mutual or unilateral mistake, just as the district court had reformed the later five guarantees, and he should be relieved of liability. The parties agree that their dispute is governed by Colorado law.

A. *Terms of the Contract*

Although Mr. Connelly does not dispute on appeal that Mosaica owed Tatonka some $5 million, he argues that Tatonka failed to prove at trial that any of that debt was on the Revolver loans and that the Guaranty covered only debt on Revolver loans. The district court rejected this argument on the ground that Tatonka had in fact proved that the debt arose from the Revolver loans. But we affirm on an alternative ground, one which Tatonka has pursued both in district court and on appeal. *See Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1099 (10th Cir. 2019) ("[W]e have discretion to affirm . . . on any ground adequately supported by the record, so long as the parties have had a fair opportunity to address that ground." (original brackets and internal quotation marks omitted)). In our view, the language of the Guaranty unambiguously covered *all* debt owed by Mosaica to Tatonka.

The Guaranty signed by Mr. Connelly states: "The Guarantor hereby, personally and unconditionally . . . guarantees the due and punctual payment and performance of each of the Obligations of the Borrower under the Loan Agreement (the 'Guaranteed Obligations')." Aplee. Supp. App., Vol. 2 at 264. The Guaranty identifies Michael Connelly as the Guarantor and Mosaica as the Borrower. *See id.*

4

The Loan Agreement is identified as the "Revolving Loan and Security Agreement, dated as of October 30, 2007 (as may be amended, supplemented or otherwise modified from time to time . . . )"—that is, the Revolver. *Id.* Although the term *Obligations* is not defined in the Guaranty, the Guaranty provides that "capitalized terms . . . not defined herein shall have the meanings assigned to such terms in the [Revolver]." *Id.* And the Revolver defines *Obligations* as "all obligations now or hereafter owed to Tatonka or any Affiliate of Tatonka by any Mosaica Party whether related or unrelated to the Revolver Loans, this Agreement, or the Loan Documents." *Id.* at 255. The text of the Guaranty and the Revolver together could not be clearer in providing that the Guaranty covers all debt of Mosaica to Tatonka.

Mr. Connelly contends that the "Guaranteed Obligations"—defined as "Obligations of the Borrower under the Loan Agreement"—are simply the obligations of Mosaica (the Borrower) under the Revolver (the Loan Agreement). But this contention ignores that the word *Obligations* is capitalized, and therefore a defined term, and the definition includes all debts to Tatonka. He argues that the construction we adopt makes no sense because then the term *Guaranteed Obligations* is identical to the word *Obligations*, and documents should not be interpreted in a way that makes language superfluous. This argument ignores, however, that the Guaranteed Obligations are "Obligations of the *Borrower*"—that is, they are only those Obligations (as defined in the Revolver) owed by Mosaica. Yet the Obligations defined by the Revolver include obligations by any "Mosaica Party," *id.*, and the Revolver defines *Mosaica Parties* as Mosaica "and all Guarantors," *id.* at 254.

5

Consequently, the term *Guaranteed Obligations* is not superfluous, because it excludes debts owed by guarantors from the defined term *Obligations*. We conclude that Mr. Connelly guaranteed each of Mosaica's "Obligations" under the Revolver, which meant he was guaranteeing all amounts owed by Mosaica to Tatonka.

Mr. Connelly next argues that this construction of the Guaranty is incompatible with the Loan Modification Agreements executed in conjunction with the various guarantees because those agreements show that the guarantees were limited to repayment of the short-term advances. The problem with this argument is that we do not know what the Loan Modification Agreements said because they were not admitted at trial. The district court told Mr. Connelly that he could present them as evidence, but he did not do so. He argues in his reply brief that Tatonka was the one with the agreements; yet he does not explain why he could not have obtained a copy or why he failed to argue this point in district court. *Cf. United States v. Brewington*, 944 F.3d 1248, 1250-51 (10th Cir. 2019) (appellant waived his argument that the district court should have considered certain evidence when he never "asked the district court to admit [the evidence]"). We therefore decline to speculate on how the Loan Modification Agreements may have created an ambiguity in the crystal-clear Guaranty.

B. *Mistake*

As stated in Mr. Connelly's opening brief, he "argued in the District Court that the [guaranty] agreements should be reformed under the equitable doctrine of Mutual Mistake or, in the alternative, rescinded under the equitable doctrine of Unilateral Mistake, based on Tatonka's silence despite its knowledge that Mr. Connelly and

6

Mosaica were mistaken in their understanding of the Guaranty Agreements." Aplt. Br. at 16. Not only did he make those arguments, but he prevailed on those arguments with respect to five of his guarantees and was held not liable on them. The reason he did not prevail with respect to the Guaranty (the first of the six guarantees) is that the district court found that Tatonka did not know at the time the Guaranty was executed that Mr. Connelly and Mosaica had misunderstood the Guaranty. Thus, Mr. Connelly failed to escape liability under his equitable arguments. Mr. Connelly does not cite to any evidence showing that the district court clearly erred in making these findings. We must therefore affirm its decision.

III. Conclusion

For the foregoing reasons, we affirm the district court's amended final judgment.

Entered for the Court


Harris L Hartz
Circuit Judge

7